Thank you, your honors. I would like to reserve two minutes for rebuttal. May it please the court. My name is Barbara Tucker. I am appearing on behalf of Luis Demelo in this civil social security appeal. This case is a battle for benefits that could save Luis Demelo's life in a watershed case or under garrison. For the credit, it's true and concrete. Which provides a path for claimants who have been unjustly waiting for years to receive the benefits they so desperately deserve. The record was complete with the following evidence not sufficiently rejected. So I want to give a little overview about that. Before you do that, can I ask you, I got this this morning. Medical records from January. What am I supposed to do with this, getting it this morning? I just obtained that from the claimant, from Luis Demelo. What do you expect me to do with something you're submitting this morning as evidence for what? What was the purpose? It shows that Demelo's condition has stayed the same with 20% ejection fractions that are life-threatening, 20 to 30%. I had to search something highlighted by you. It's not a complete medical record. It's not part of the docket. It's not part of the record in the case. I'm just wondering, what was the point to giving me something factual this morning that I don't even know if the other side has seen? What was the goal? My goal was to show that his condition has continued and also that Dr. Sanga stated that there was a mistake made on the 5-mile. It's just because that seemed to poison the case in part. But could you not have known that when you filed your brief, that he made a mistake about 5 miles instead of 5 blocks? I'd like to just get back to make sure we're framing the question properly here because the issue before us is whether the district court abused its discretion in determining that this case should be remanded. Because the first step of the creditor's true role was that the record was not fully developed because of post-decision filings that were submitted regarding his medical record. And in fact, now sort of even exacerbated by the filing he gave us yesterday that shows even more records were submitted as to his current medical status that he's been getting additional treatment. And it's really not clear what his current condition is. And so why is it an abuse of discretion that the decision was it should be remanded for further inquiry? Because, Your Honor, ejection fractions in this case range from 10% to 35%. And normal is 55% to 70%. And his ejection fractions throughout dependency and also in those records are 10 to 20 to 30%. And when you have ejection fractions at that level, you have a higher risk of cardiac arrest and death. And when you have a 10% ejection fraction, that gives a 90% risk of death over five years. And so he is in a very perilous condition. And therefore, I wanted to bring that to the court's attention. But again, the question being, did the district court abuse its discretion when the record wasn't fully developed such that it was beyond the pale of reasonable justification under the circumstances to say this needed to get remanded? This isn't a de novo review. This is an abuse of discretion consideration. And I really don't think you address that standard here. I know you think your client should be entitled to benefits. And it may be that in reviewing the whole record, oh, I might agree with you. But the fact is that's not what I'm doing here. I'm looking at whether the district court was wrong and with an abuse of discretion, you know, beyond the pale in deciding that this should be remanded for further development of the record, given that records were coming in and are still coming in as to this gentleman's medical condition. Your Honor, I would say that in this situation we have both, and under Garrison and also Harmon, the Garrison and Harmon cases state that you have both de novo and abuse of discretion. So, in this case, we have the commissioner alleging that Mr. D'Mello's medical condition had dramatically improved. And when you look at the medical records, his medical condition did not improve. His injection fractions stayed listing level. And Dr. Plutia, his treating physicians frequently gave observations that he had threat of premature death. And with Dr. Plutia's assessment, he stated, and here he is, he was the government's own doctor, and he stated that Mr. D'Mello was significantly disabled, that he met class three heart failure symptoms. And throughout, if he did meet those, there would be no situation in which he was getting improving. And, in fact, Dr. Gerber, when he did, he completely mischaracterized the record. He stated even just a few days after D'Mello had suffered his second cardiomyopathy attack that resulted in him never being able to work again, he said in April, he, D'Mello suffered his attack in February. And in April, Gerber stated that he basically had no symptoms and that he was just fine. While his doctors, well, Telus was stating that he had shortness of breath, dizziness, rapid heart, heart rate, that he could only walk one walk, and that he had an increased risk of death to 30% over two years. And Dr. Ali was stating that D'Mello was disabled for one year on one visit, showing the seriousness of his condition. And Dr. Gupta and Zunga disabled him for one year on his, for a lifetime on his welfare form. And Dr. Gupta stated his prognosis was very much guarded, rather poor. And so, and then on, with Dr. Kudia, he said that he had marked limitation of his physical activity through the interpretation of the class three symptoms, which basically, saying he had class three symptoms, and previously he was said to have class four, so class three symptoms with marked limitations in your activities of daily living, with his ejection fractions, and Dr. Kudia's assessment, that essentially what that did was satisfy listing 4.02, and he should have been found disabled right then. I want to go back and get to where we are in this gentleman's disability record. In 2006, he went to, he claimed his disability, and in 2011, the ALJ found that he was not disabled. And if everything had stopped then, and that was the complete record, and your position for a review here would be that the decision of the ALJ was contrary to the evidence, contrary to the law, he didn't properly credit the doctors, and that he found evidence that did support his finding. There's a dispute in the record. There are records that go, Daisy's good, Daisy's not so good. So, setting that aside, though, then, while he's up for review, additional records come in that, I know your position is they further support the finding, but there's also the implantation of the stent, and there's no, there's nothing there to that. Did that help? Did that make it better? The record then becomes open and incomplete, and the district judge found that in light of that, it's not done yet. Send it back and find out what happened. Now we've got two more years of medical intervention, and I don't have a whole lot of information here from what you just filed, but, you know, there's stuff that shows he responded very well to these surgeries, that they resolved a problem. So, again, I don't know what his current condition is. Why is it not appropriate to send this back to complete his medical record? Because, Your Honor, as I was trying to mention, is that with what Dr. Gerber did, he misconstrued the record. He said that the mellow was just fine after he had his severe 2006 cardiomyopathy attack, and then he also stated that he had improved with his ejection fractions. And when you look at the ejection fractions, they're 26.8 and 30. Those are LISD level ejection fractions. That's no improvement, no improvement. And here the mellow has been waiting for 11 years. Counsel, is that the issue, the evidence you just mentioned, was that in the record before the appeals? I'm up here. I'm just asking, what you just mentioned, was that in the record before the appeals? It was there when the case was down at the administration. And so, I think my judgment is the thing I was getting at, I'm sorry for mispronouncing, is that your position on the appeals that should be remanded for an award of benefits, because, among other things, the record was thoroughly developed and demonstrated that he was disabled when it was before the ALJ. And everything since, including the evidence you submitted before the appeals counsel, just further shows he's even more disabled. But it's a little bit inconsistent with your position that you have to take for the credit as true doctrine that the record was thoroughly developed below. You need to have to put any further evidence in if the record was thoroughly developed below. And so, abuse of discretion can be a legal error. And if the district court was wrong about whether or not the record was thoroughly developed below, so as to support a finding of disability, then we could reverse the district court and remand for an award of benefits. But I think, you know, even your submitting more, I understand your fervor in overstating your client, but it is somewhat inconsistent with your position that the record was already previously thoroughly developed. May I just comment? Please. Okay, what I wanted to draw your attention to is that Gerber was stating that DeMello basically didn't have any symptoms when just a few days after his 2006 cardiomyopathy attack. And DeMello, in 2000, suffered his first attack, and he's not someone who is a piker or what have you. He battled back from his 2000 attack and worked for six years. And there are references in the record stating that it was harder on him not to be working, almost, than his disease, and his disease was very serious. But so then what Gerber did is he stated that, here he said he didn't have any symptoms, and Dr. Lee and Gupta and his other treating physicians are saying he has the risk of imminent death. I mean, those can, and then he has those ejection fractions. In 2000, he's saying he improved, and in 2008, 2009, he had 10% and 13%. I was just wondering, the ALJ said that the record showed that DeMello was walking five miles a day in 2009 to 2010. Is there any record evidence that supports that finding by the ALJ? I don't believe that there is. I think it's completely implausible. And the new evidence, Dr. Sangha stated that he could not, and there are also affidavits from family members saying that they had never seen him walk five miles, that he couldn't walk five miles. And there's in the record that he had walked his daughter to school two blocks and had to have several hours of recuperation from that from chest pain. And that the most he could walk was 80 feet to the mailbox and back, so that he could walk five miles, wasn't a mistake. I appreciate you taking your time. Next we are going to look at... Thank you. Thank you, Your Honors. Thank you. Good morning, Your Honors. Elizabeth here for the Acting Commissioner of Social Security. This is a case of abuse of discretion. You have to review what the district court action did here, and what the district judge did was decide that given the new evidence, the claim it submitted to the appeals counsel after the ALJ's decision, she could not tell on the current record whether or not the ALJ's decision was supported by substantial evidence. That's not beyond the pale of reason under these circumstances, and I think Judge Benzemago stated it pretty clearly. This is a different standard than de novo review. We don't get into de novo review here unless you decide that the district court's decision to remand from the proceedings with new evidence was beyond the pale of reasonable justification. If the new evidence only further substantiates what the old evidence did, is it even necessary to the decision? Well, that's a very vague question. Given the errors that were found, and when the ALJ committed numerous errors, I would consider that there to be further errors in the district court found. I'm just wondering whether it wasn't incorrect to say that the additional evidence had to be, I mean, as a matter of law, additional evidence had to be considered. Well, I don't know what errors the district court found that the ALJ made specifically, and I think the district court said that talks about the ALJ's reasoning she didn't actually come to a conclusion unless she talked about it all. The part is reviewed de novo as if whether there were errors in the ALJ's determination is a matter of law. That part would be reviewed de novo. I think you would review that de novo given what the district court did. You still have to look at the district court's actions. That's right. But you look at what the errors were de novo and determine whether or not the district court abused your discretion in not reporting a beheading for an award of evidence. But the district court didn't find any. Okay. I do agree with that. Okay. And that's what the case is. I guess we can't review de novo to say the errors here are just plain on their face. I mean, if it's all seen, not examining, not treating. I don't think the district court said that. It doesn't matter what the district court said. Well, you're reviewing the district court's actions here. Right. But we can also look at what the ALJ did. Okay. Well, I don't think we find a case where this court found abuse of discretion in a case where it wasn't addressing what the district court did with respect to the ALJ's decision. Garrison talks about all of it. Like the district court said, this court did not find that the commissioner's decision is supported by substantial evidence in light of the post-hearing medical reports. We don't get away with that. That's what she said, and she said it because the ALJ's reasoning was based on a theory of improvement, which she said the new evidence called into question. That's on page 5 of the order. The evidence before the district court and the ALJ, as at the time of the evidence before the ALJ counsel, is dramatically inconsistent with the theory of improvement of the ALJ error. Well, I don't – if that were true, that would be an error. But that's not true. I think we decide whether that's true or not. Well, let me just point out that an ejection fraction is not a disability. People who have low ejection fractions get pacemakers to help alleviate the possibility of sudden death. And he had his pacemaker signed in 2006. It's 2017, and he's still functioning. And the listing, in this case, 402, is extremely complicated. We had one doctor, Dr. Gerber, who did not misrepresent the record at the hearing, and I would say that the five miles is on page 745. Dr. Stillman specifically said in December 2009 that he walked five miles. But so at the hearing, Dr. Gerber, who is the cardiologist, reviewed this record and concluded, and only he didn't provide a lot of articulation, but he concluded that the claim didn't meet the listing. Right, right. And the ALJ gave the greatest weight to Dr. Gerber's testimony, but Dr. Gerber neither treated nor examined Mr. Gemello. That's true. But those four tests were not seen correct. That's an incorrect legal standard. I'm sorry? No, that was incorrect. It means you're supposed to give the three physicians the highest weight. That is not an automatic rule at all. There's plenty of evidence, plenty of orders from the court that say an ALJ can give a specific weight to other persons. There are certain other things, such as giving a specific lactate amount, exerting reasons or convincing reasons for discounting the weight, because you believe that treating physicians does nothing. Well, it would be clear and convincing if they were uncontroverted, and there is not uncontroverted evidence in this case. And I would also like to point out that none of the treating sources actually issued medical opinions. They just said he was disabled. The claimant was doing extremely heavy work during the time that he stopped working in 2006. There is nothing in those medical reports of disability that's saying anything about his functionality. They could have been talking about the work that he had been doing. A medical opinion has to have evidence of functionality, and all we have here are these conclusory statements of disability. Until you get Dr. Bajal, who is the EAC evidence, and his decision is just, it doesn't make any sense in terms of what the listing actually requires. He talks about things that aren't in it. The only thing he relies on is the ejection fractions. We know claimant has co-ejection fractions. That's only part A of the listing. When you look at the, he also has to meet part B, which is relatively complicated. This is just cold, this printout of that listing. So we know he has the low ejection fraction, that's part A. He also has to have one of the following. He has a persistent symptoms of heart failure, which seriously limits his ability to sustain and complete activities of daily living. He is gardening, he's walking, he interfered in mugging. At one point, this is not someone who can't initiate and sustain activities. That's B1. B2, he has to have three or more separate episodes of congestive heart failure within a consecutive 12-month period. He doesn't have them. Three, the inability to perform an exercise test in a workload with a lot of, well, it's typically low. Due to display of fatigue, palpations or chest discomfort, three or more consecutive premature ventricular contractions, ventricular tachycardia, or increasing frequency of ventrular XFP within at least six premature ventricular contractions per minute. Do we know what that means? Dr. Gerber did. Decrease of 10 milligrams of systolic pressure or a size attributable to cerebral perfusion, such as a tachycardia or mental confusion. He doesn't have any of those. He has the low ejection fractions. So what in this record do you possibly credit as true to say that he's disabled? You can't credit simple statements that he's disabled. You can't credit Dr. Gerber or Dr. Bazaal's opinion, because it has nothing to do with the actual listing. And if you're going to go to his testimony, he said at the hearing that when Yale specifically asked students on page 140 if he could perform a sedentary job, he didn't say that he couldn't. He said he couldn't drive, and then he said, if I had a job nearby, I could do it. Arguably, he didn't go quite that far, but he doesn't say I can't work. So we don't have an unequivocal record here like this court found in Garrison. We have a record like Harmon where there's new evidence that the district court revamped it so that the agency can consider it in full. Unless you have any further questions, I don't believe that's an abuse of discretion I should affirm here. Thank you. Thank you. Thank you. We'll give you a minute for a vote. First, the listing states that you can't initiate and sustain activity. And moreover, in the district court, the commissioner agreed that DeMello met the listing through 2009. They agreed. They stated that he met the listing at least through 2009. And in 2010, he has a myocardial infarction, and obviously a worsening of his condition. And when you read through the symptomology, he has class 3 or class 4 heart failure symptoms over and over again. That's what he testifies to. He states that he can't walk. He can't drive. He has difficulty doing dishes or anything, any little activity gives him shortness of breath. And his brother testifies to the same thing, that all he is doing is lying around. And that's all he can do is just lie in bed. And Garrison and Trangler both state, citing Harmon, that it is a confined de novo and abuse of discretion standard that you have to have in looking at a treating physician situation I think that Fuzzy Castle conceded that. I'm over here. Okay. I think that Fuzzy Castle conceded that we look at the ALJ's findings de novo and then determine whether it is a discretionary decision in reviewing the further proceedings as to the use of discretion or not. And Dr. Gerber significantly misrepresented the record, not just a little, but significantly. He did not come forward about the ejection fractions. And then he stated that Mr. DiMello had improved to the point of having basically no symptoms and that he could go right to work when the other physicians, his other treating physicians, were stating that his situation was perilous. And so, therefore, you know, that just was a complete mischaracterization of what DiMello was experiencing, and he continued to experience that kind of situation. And he was homeless, and when he went somewhere, he did have to walk to the grocery store or what have you. When he had to go someplace. And so, therefore, he may have had to walk to the grocery store, as I mentioned, or someplace like that. But his condition still was very serious and perilous. And without the garrison type of remand for benefits, he is going to be waiting for benefits even longer. Here he's been waiting 11 years. It's very, very important for these types of claimants to have them be awarded for benefits, because otherwise he's going to be waiting years and years and years. And there is no more time. Thank you. The case is arguably set for decision, and we will proceed with the argument in the case of Flyscott versus the very healthy one.
judges: Thomas, Wardlaw, Bencivengo